## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **SWB RIVER SQUARE CENTER** | § | **CASE NO. 13-30009-H1-11** |
| **PARTNERS, L.P.,** | § | **(CHAPTER 11)** |
| | § | |
| DEBTOR. | § | |

### NOTEHOLDER'S MOTION FOR RELIEF FROM
### THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)

**THIS IS A MOTION FOR RELIEF FROM THE AUTOMATIC STAY.  IF IT IS GRANTED, THE MOVANT MAY ACT OUTSIDE OF THE BANKRUPTCY PROCESS.  IF YOU DO NOT WANT THE STAY LIFTED, IMMEDIATELY CONTACT THE MOVING PARTY TO SETTLE.  IF YOU CANNOT SETTLE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY AT LEAST 7 DAYS BEFORE THE HEARING.  IF YOU CANNOT SETTLE, YOU MUST ATTEND THE HEARING.  EVIDENCE MAY BE OFFERED AT THE HEARING AND THE COURT MAY RULE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**THERE WILL BE A HEARING ON THIS MATTER ON AUGUST 6, 2013 AT 9:00 A.M. IN COURTROOM 404, UNITED STATES COURTHOUSE, 515 RUSK ST., 4TH FLOOR, HOUSTON, TEXAS 77002.**

TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:

JPMCC 2007-CIBC19 Waco Retail, LLC (the "Noteholder"),[1] a secured creditor of SWB River Square Center Partners, L.P. (the "Debtor") and party in interest herein, files this Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d) (the "Motion"), pursuant to § 362(d)(1) and (2) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 4001(a)(1) and (a)(3) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

---

[1] By and through special servicer LNR Partners, LLC, successor by statutory conversion to LNR Partners, Inc. ("LNR"), acting on behalf of U.S. Bank, National Association, as Trustee for the Registered Holders of JPMorgan Chase Commercial Mortgage Securities Trust 2007-CIBC19, Commercial Mortgage Pass-Through Certificates, Series 2007-CIBC19 (the "Trust").

and Rule 4001-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules" or "BLR"), and requests entry of an order terminating the automatic stay.

## JURISDICTION

1.    The Court has jurisdiction to consider the relief requested in this Motion under 28 U.S.C. § 1334(b) and the standing order of reference of the District Court.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G), and (O).  The statutory predicates for relief are 11 U.S.C. § 362(d)(1) and (2) and Bankruptcy Rules 4001(a)(1) and (a)(3).

## SUMMARY OF RELIEF REQUESTED[2]

2.    The Noteholder is entitled to relief from the automatic stay to pursue its state law rights and remedies against its interest in the personal and real property held by the Debtor for cause pursuant to § 362(d)(1) of the Bankruptcy Code.[3]  This case is a classic two-party dispute. This case and the proposed Plan represent an effort to stretch out the loan for six more years with extraordinary protections provided to the Debtor's principals after the Debtor could not bring the Note current after it defaulted on its obligations.   On the eve of the foreclosure sale of the Debtor's Property, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code solely to prevent the Noteholder from foreclosing on the Property securing the Debtor's indebtedness.  The Debtor has stipulated and agreed that it is a single asset real estate ("SARE") entity under 11 U.S.C. § 101(51B).[4]  The Debtor has no employees, and the unsecured

---

[2] Certain capitalized terms used in the Summary of Relief Requested are defined later in this Motion.  All other undefined capitalized terms appearing in this Motion shall have the meanings ascribed to them in the Final Cash Collateral Order and/or the proposed Plan.

[3] The property includes, *inter alia*, all of the Debtor's commercial real property located at 215 South 2nd Street, Waco, Texas 76701 and commonly referred to as the "River Square Center" (the "Property").  The Property is more particularly described by metes and bounds in the Deed of Trust attached hereto as **Exhibit B**.

[4] Agreed Final Order Granting and Conditioning Debtor's Use of Cash Collateral Through June 30, 2013 (Docket No. 33) (the "Final Cash Collateral Order"), at ¶ C.

claims in this case are *de minimis* compared to the amount of the indebtedness due to the Noteholder.

3.     The Debtor has filed a Plan that attempts to cram down approximately $7.9 million in secured debt owing to the Noteholder by artificially impairing, without any business justification, secured tax claims and roughly $30,000.00 worth of unsecured claims, while proposing to pay the same over a five-year period.  However, the Debtor's own Budgets project sufficient cash on hand and monthly net cash flow to immediately pay unsecured creditors in full (with interest) and to begin escrowing for 2013 property taxes so as to immediately satisfy the same when they become payable in January 2014. *See* Final Cash Collateral Order, Exhibit A. The Debtor also proposes to cure and deaccelerate the Note, yet inexplicably omits much of the amounts due and owing to the Noteholder as set forth in its Proof of Claim (Claim No. 5).  The foregoing makes dubious the Debtor's need to impair secured tax and unsecured claims and suggests bad faith as well as the unfair and inequitable treatment of the Noteholder, all of which constitute cause to grant the Noteholder stay relief under § 362(d)(1) of the Bankruptcy Code.

4.     Additionally, the Noteholder is entitled to stay relief pursuant to § 362(d)(2) of the Bankruptcy Code because: (i) the Debtor has no equity in the Property; and, (ii) the Property is not necessary for an effective reorganization because the Debtor is incapable of reorganizing under Chapter 11.  The Debtor's Plan is facially unconfirmable because: (i) this case was filed and the Plan was proposed with an impermissible purpose indicative of a lack of good faith in violation of § 1129(a)(3) of the Bankruptcy Code; (ii) the Plan fails to satisfy the best interests of creditors test under § 1129(a)(7) of the Bankruptcy Code; (iii) the Plan violates § 1129(b) of the Bankruptcy Code by providing unfair and inequitable treatment of Noteholder's Class 2 Secured Debt Claim; (iv) the Plan is not feasible as required by § 1129(a)(11) of the Bankruptcy Code; (v) the Plan remains subject to creditor dissent; (vi) the Plan improperly impairs and classifies

claims, including unsecured claims held by insiders, in violation of §§ 1122 and 1129(a)(10) of the Bankruptcy Code; and, (vii) the Plan violates § 524(e) of the Bankruptcy Code by imposing non-consensual releases in favor of non-Debtor third parties.

5.      In light of the foregoing deficiencies, the Debtor's Plan is unconfirmable because it does not comply with § 1129 of the Bankruptcy Code.   Moreover, the Debtor cannot confirm any plan in order to reorganize within a reasonable time because: (i) the Noteholder controls all impaired classes and will object to any cram down plan; and, (ii) any plan the Debtor proposes necessarily must rely on some type of bad-faith, artificial impairment of secured tax and/or unsecured claims in order to obtain an impaired accepting class by which to attempt to cram down Noteholder's Secured Debt.

6.      Given the composition of the classes and claims, and the economic position of this Debtor's estate, this case represents a two-party dispute unsuitable for Chapter 11.   Because the Debtor is unable to reorganize within a reasonable time, this Court should grant relief from the stay to allow Noteholder to exercise its rights and remedies under the Loan Documents, including, but not limited to, the right to post and conduct a foreclosure sale of the Property and Collateral.[5]

## FACTUAL AND PROCEDURAL BACKGROUND

7.      The Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the U.S. Code (the "Bankruptcy Code") on January 1, 2013 (the "Petition Date"), one day prior to the Noteholder's foreclosure sale of the Property and Collateral.   The Debtor continues in possession of the Collateral (defined below) pursuant to 11 U.S.C. §§ 1107 and 1108.

---

[5] The Collateral consists of the Property, any and all improvements and personal property situated therein, or rents derived therefrom, in addition to, *inter alia*, any and all rights, rights-of-way, easements, improvements, fixtures, air rights, development rights, zoning rights, contracts, leases, and cash collateral related thereto, including, but not limited to all real and personal property described in the Deed of Trust.

8.    Prior to the Petition Date, CIBC, Inc. ("CIBC") extended financing and certain related financial accommodations to the Debtor, which are evidenced by the following documents (collectively, the "Loan Documents"):

(*i*)    Promissory Note, dated January 26, 2007, executed by the Debtor and payable to CIBC in the principal amount of $6,880,000.00 as security for certain financial accommodations extended to the Debtor by CIBC (the "Note"). A true and correct copy of the Note is attached hereto as **Exhibit A** and incorporated herein for all purposes;

(*ii*)    Deed of Trust, Assignment of Leases and Rents and Security Agreement (the "Deed of Trust") dated January 26, 2007, executed by the Debtor in favor of CIBC, and recorded in the Official Public Records of McLennan County, Texas on January 30, 2007 under File No. 2007003503. A true and correct copy of the Deed of Trust is attached hereto as **Exhibit B** and incorporated herein for all purposes;

(*iii*)    Assignment of Leases and Rents (the "First Assignment of Leases") dated January 26, 2007, executed by the Debtor in favor of CIBC, and recorded in the Official Public Records of McLennan County, Texas on January 30, 2007 under File No. 2007003505. A true and correct copy of the First Assignment of Leases is attached hereto as **Exhibit C** and incorporated herein for all purposes;

(*iv*)    UCC-1 Financing Statement (the "UCC-1") in favor of CIBC and filed in the Official Public Records of McLennan County, Texas on January 30, 2007 under File No. 2007003583 and in the Office of the Texas Secretary of State on January 30, 2007 under File No. 07-0003466733. A true and correct copy of the UCC-1 is attached hereto as **Exhibit D** and incorporated herein for all purposes;

(*v*)    Assignment of Deed of Trust, Assignment of Leases and Rents and Security Agreement and Assignment of Assignment of Leases and Rents (the "First Deed of Trust Assignment") effective as of June 14, 2007, executed by CIBC in favor of LaSalle Bank National Association ("LaSalle"), as Trustee for the Registered Holders of JPMorgan Chase Commercial Mortgage Securities Trust 2007-CIBC19, Commercial Mortgage Pass-Through Certificates, Series 2007-CIBC19 (the "Trust"), and filed in the Official Public Records of McLennan County, Texas on March 19, 2008 under File No. 2008008659. A true and correct copy of the First Deed of Trust Assignment is attached hereto as **Exhibit E** and incorporated herein for all purposes;

(*vi*)    UCC-3 Financing Statement Assignment (the "First UCC Assignment") in favor of LaSalle, as Trustee for the Trust, filed in the Official Public Records of McLennan County, Texas on March 19, 2008

under File No. 2008008658 and in the Office of the Texas Secretary of State on January 10, 2008 under File No. 08-00011288. A true and correct copy of the First UCC Assignment is attached hereto as **Exhibit F** and incorporated herein for all purposes;

(*vii*)    Allonge to Promissory Note executed by CIBC in favor of LaSalle, as Trustee for the Trust (the "First Allonge"). A true and correct copy of the First Allonge is attached hereto as **Exhibit G** and incorporated herein for all purposes;

(*viii*)    Assignment of Deed of Trust, Assignment of Leases and Rents and Security Agreement and Other Loan Documents (the "Second Deed of Trust Assignment") dated May 25, 2012, executed by Bank of America, N.A. ("BoA"), successor-by-merger to LaSalle, as Trustee for the Trust, in favor of U.S. Bank, National Association ("U.S. Bank"), as Trustee for the Trust, and filed in the Official Public Records of McLennan County, Texas on June 8, 2012 under File No. 2012017143. A true and correct copy of the Second Deed of Trust Assignment is attached hereto as **Exhibit H** and incorporated herein for all purposes;

(*ix*)    Assignment of Assignment of Leases and Rents (the "Second Assignment of Leases") dated May 25, 2012, executed by BoA, as Trustee for the Trust, in favor of U.S. Bank, as Trustee for the Trust, and recorded in the Official Public Records of McLennan County, Texas on June 8, 2012 under File No. 2012017144. A true and correct copy of the Second Assignment of Leases is attached hereto as **Exhibit I** and incorporated herein for all purposes;

(*x*)    UCC-3 Financing Statement Assignment (the "Second UCC Assignment") in favor of U.S. Bank, as Trustee for the Trust, filed in the Official Public Records of McLennan County, Texas on June 8, 2012 under File No. 2012017145 and in the Office of the Texas Secretary of State on June 7, 2012 under File No. 12-00182065. A true and correct copy of the Second UCC Assignment is attached hereto as **Exhibit J** and incorporated herein for all purposes;

(*xi*)    Allonge to Promissory Note executed by BoA, as Trustee for the Trust, in favor of U.S. Bank, as Trustee for the Trust (the "Second Allonge"). A true and correct copy of the Second Allonge is attached hereto as **Exhibit K** and incorporated herein for all purposes;

(*xii*)    Assignment of Deed of Trust, Assignment of Leases and Rents and Security Agreement and Other Loan Documents (the "Third Deed of Trust Assignment") dated October 31, 2012, executed by U.S. Bank, as Trustee for the Trust, in favor of the Noteholder, and filed in the Official Public Records of McLennan County, Texas on November 13, 2012 under File No. 2012035741. A true and correct copy of the Third Deed of Trust Assignment is attached hereto as **Exhibit L** and incorporated herein for all purposes;

(*xiii*)   Assignment of Assignment of Leases and Rents (the "Third Assignment of Leases") dated October 31, 2012, executed by U.S. Bank, as Trustee for the Trust, in favor of the Noteholder, and recorded in the Official Public Records of McLennan County, Texas on November 13, 2012 under File No. 2012035742.  A true and correct copy of the Third Assignment of Leases is attached hereto as **Exhibit M** and incorporated herein for all purposes;

(*xiv*)   UCC-3 Financing Statement Assignment (the "Third UCC Assignment") in favor of the Noteholder, filed in the Official Public Records of McLennan County, Texas on January 8, 2013 under File No. 2013000741 and in the Office of the Texas Secretary of State on January 7, 2013 under File No. 13-00006143.  A true and correct copy of the Third UCC Assignment is attached hereto as **Exhibit N** and incorporated herein for all purposes; and,

(*xv*)   Allonge to Promissory Note executed by U.S. Bank, as Trustee for the Trust, in favor of the Noteholder (the "Third Allonge").  A true and correct copy of the Third Allonge is attached hereto as **Exhibit O** and incorporated herein for all purposes

9.   Noteholder is the owner and holder of the Loan Documents.  As set forth in the Final Cash Collateral Order, Noteholder asserts that, as of the Petition Date, the Debtor owed Noteholder an aggregate amount not less than **$6,360,726.57** in unpaid principal, plus unpaid accrued Note-rate interest in the amount of at least **$33,630.57**, in addition to default interest in the amount of at least **$196,388.82**, plus at least **$79,971.32** in fees, charges, and costs, in addition to a yield maintenance/pre-payment premium totaling not less than $**1,396,519.00**, as well as other amounts due under the Loan Documents, and additional amounts to the extent permitted by applicable law and the Bankruptcy Code, including, but not limited to, Noteholder's attorneys' fees, costs, and expenses, less all applicable credits (the "Pre-Petition Indebtedness").  Additionally, Noteholder's attorneys' fees and costs, in an as yet to be determined amount, as well as any and all related fees, costs, obligations, and liabilities associated with the Loan Documents, continue to accrue, and are in addition to the Pre-Petition Indebtedness.  In compliance with BLR 4001-1(a)(6), a statement outlining the Pre-Petition Indebtedness, as well

as any payments made by the Debtor, is attached as hereto as **Exhibit P** and incorporated herein for all purposes.

10.     Pursuant to the Loan Documents, the Pre-Petition Indebtedness is secured by a valid, properly perfected, non-avoidable, first-priority lien and security interest encumbering the Collateral, which, under the terms of paragraph 26 of the Final Cash Collateral Order, is no longer subject to challenge by any party.  According to Schedule D of the Debtor's Schedules of Assets and Liabilities (Docket No. 1) (the "Schedules"), there are no other secured creditors with liens on the Property besides the Noteholder and taxing authorities with claims for 2013 *ad valorem* taxes.   As such, Noteholder's lien represents the only significant secured debt encumbering the Property.[6]

11.     Upon information and belief, the Debtor has no valid setoffs, counterclaims, defenses, or other claims or causes of action against the Noteholder arising out of the Loan Documents.

12.     On March 29, 2013, the Court entered the Final Cash Collateral Order.

13.     On May 10, 2013, the Debtor filed its Chapter 11 Plan of Reorganization (Docket No. 37) (the "Plan") and Disclosure Statement for SWB River Square Center Partners, L.P. (Docket No. 36) (the "Disclosure Statement").  On May 31, 2013, the Court entered an Order (Docket No. 39) setting a hearing on the Disclosure Statement for July 22, 2013 at 10:00 a.m.

14.     On July 2, 2013, under the terms of paragraph 28 of the Final Cash Collateral Order, the parties filed a Notice of Extension (Docket No. 42) (the "Cash Collateral Extension")

---

[6] Aside from the Noteholder's secured claim and the secured tax claims described in this Motion, the Schedules, the Claims Register, and the Debtor's Plan reflect that the only other claims against the Debtor are approximately: (i) $30,600.00 worth of non-insider, unsecured claims; (ii) $154,691.62 worth of secured tax claims; and, (iii) $223,875.04 worth of unsecured insider claims. *See* Schedules; Claims Register; Disclosure Statement, § 3; Plan, § 5.

of the Final Cash Collateral Order extending the terms and effectiveness of the same through July 31, 2013.

## GROUNDS FOR RELIEF

### A.      Section 362(d)(1) – For Cause

15.      Section 362(d)(1) of the Bankruptcy Code allows the Court to grant relief from the automatic stay "for cause, including the lack of adequate protection." 11 U.S.C. § 362(d)(1) (2006).  Because neither the Bankruptcy Code nor the legislative history provides a specific definition of what constitutes "cause" under § 362(d)(1), courts must determine whether relief is appropriate on a case-by-case basis. *Reitnauer v. Tex. Exotic Feline Found., Inc.* (*In re Reitnauer*), 152 F.3d 341, 343 n.4 (5th Cir. 1998).  The "cause" necessary to warrant relief from the automatic stay is an intentionally broad and flexible concept that allows courts to respond in equity to inherently fact-sensitive situations. *In re Sentry Park, Ltd.*, 87 B.R. 427, 430 (Bankr. W.D. Tex. 1988).

16.      Courts have "wide latitude in crafting relief from the automatic stay." *Fjeldsted v. Lien* (*In re Fjeldsted*), 293 B.R. 12, 21 (B.A.P. 9th Cir. 2003).  Ultimately, the decision is left to the sound discretion of the bankruptcy court. *Aheong v. Mellon Mortgage Co.* (*In re Aheong*), 276 B.R. 233, 250 (B.A.P. 9th Cir. 2002) (quoting *Mataya v. Kissinger* (*In re Kissinger*), 72 F.3d 107, 109 (9th Cir. 1995)).  Cause to terminate the stay may exist where "the stay harms the creditor and lifting the stay will not unjustly harm the debtor or other creditors." *In re Murray*, 193 B.R. 20, 22 (Bankr. E.D. Cal. 1996).

17.      Courts have found that a debtor's inability to present a confirmable plan or reorganize within a reasonable time can cause a lack of adequate protection of a secured creditor's collateral and constitutes cause to grant stay relief pursuant to § 362(d)(1) of the Bankruptcy Code. *See, e.g.*, *Pa. Footwear Corp. v. Midlantic Bank, N.A.* (*In re Pa. Footwear*

*Corp.*), 204 B.R. 165, 183 (Bankr. E.D. Pa. 1997); *NationsBank, N.A. v. LDN Corp.* (*In re LDN Corp.*), 191 B.R. 320, 326-27 (Bankr. E.D. Va. 1996).[7]   Both this case and the Debtor's Plan were filed in bad faith, which constitutes cause to lift the stay.

      **(i)**        **Bad Faith Bankruptcy and Plan Filing**

           **(a)**        **Bad Faith Bankruptcy Filing**

18.      It has long been held that a bad-faith bankruptcy filing may constitute cause to grant relief from the automatic stay. *Little Creek Dev. Co. v. Commonwealth Mortgage Corp.* (*In re Little Creek Dev. Co.*), 779 F.2d 1068, 1071-73 (5th Cir. 1986).   "While no single fact is dispositive, courts have found the following factors meaningful in evaluating an organizational debtor's good faith: (i) [whether] the debtor has one asset; (ii) [whether] the pre-petition conduct of the debtor has been improper; (3) [whether] there are only a few unsecured creditors; [(iii) whether the status of the case is essentially a two-party dispute between a single secured creditor and the Debtor]; (iv) [whether] the debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure . . . [(v) whether] the filing of the petition effectively allows the debtor to evade court orders or frustrate the creditor's exercise of its state law remedies; [(vi) whether] the debtor has no . . . employees; and, [(vii) whether there is a] lack of possibility of reorganization." *Laguna Assocs. Ltd. P'ship v. Aetna Cas. & Sur. Co.* (*In re Laguna Assocs. Ltd. P'ship*), 30 F.3d 734, 738 (6th Cir. 1994) (citing *Little Creek Dev. Co.*); *see also In re 234-6 W. 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997) ("[I]n the context of a motion either to dismiss a chapter 11 case under § 1112(b) or to lift the stay under § 362(d)(1) the standards for bad faith as evidence of cause are not substantively different

---

[7] *See, e.g.*, *Canal Place Ltd. P'ship v. Aetna Life Ins. Co.* (*In re Canal Place Ltd. P'ship*), 921 F.2d 569, 576 (5th Cir. 1991); *In re Daly*, 167 B.R. 734, 736-37 (Bankr. D. Mass. 1994) (cause for stay relief established based on, *inter alia*, debtor's inability to confirm a plan over secured lender's objection).

from each other.") (citing additional factors as set forth by the Second Circuit in *C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1312 (2d Cir. 1997)).

19.     Each of the factors above is present in this case.  As set forth in paragraph 2 *supra*, the Debtor has stipulated that this is a SARE case.  Second, the evidence will show that the Debtor defaulted on its obligations due and owing under the Loan Documents and failed to make any debt service or tax and insurance escrow payments to the Noteholder for approximately seven months prior to the Petition Date.  Third, the Disclosure Statement, Claims Register, and Schedules make clear that there are only eight (8) non-insider, unsecured claims against this estate totaling approximately $30,600.00. *See* Claims Register; Schedule F.  The Debtor's financial reporting, Budgets, and May 2013 MOR filed with this Court reflect that the Debtor can easily satisfy all unsecured creditor claims immediately, in full and with interest. Any remaining non-insider claims consist of the secured tax claims for 2013 property taxes, for which the Debtor has sufficient funds to escrow in full, but has inexplicably failed to do throughout this case.[8]  The economic realities of this case evince an attempt to impair classes for the sole purpose of cramming down the Noteholder's debt, which is impermissible.[9]

---

[8] The Debtor's May 2013 Monthly Operating Report (Docket No. 41) (the "May 2013 MOR") reflects that the Debtor had a cash balance of approximately $145,700.00 as of May 31, 2013, which is more than enough to satisfy all unsecured claims in full with interest; thus, the proposed treatment clearly fails to satisfy the best interest test for creditors under § 1129(a)(7) of the Bankruptcy Code. *See* May 2013 MOR, p. 7; *In re Sound Radio, Inc.*, 93 B.R. 849, 858 (Bankr. D.N.J. 1988) (citing *In re Hendrick*, 45 B.R. 976, 987 (Bankr. M.D. La. 1985)) (noting that the test under § 1129(a)(7) is one that considers the "best choice among reasonably workable alternatives" and ***not*** simply the "maximum conceivable" benefit that may inure).  Indeed, the Plan and Disclosure Statement are completely devoid of a true liquidation analysis, but rather provide unsubstantiated assertions that liquidation would carry more burdens and less return to creditors, notwithstanding the Debtor's assertions of equity in the estate.  Moreover, the Debtor's Budget attached as Exhibit A to the Cash Collateral Extension projects approximately $60,000 in monthly net cash flow, and positive monthly net cash flow after debt service (while escrowing for taxes, insurance, and reserves) through the remainder of 2013.  Yet, the Plan only calls for the Debtor to begin escrowing for taxes in January 2014. *See* Plan, § 5.03.02(f).

The Noteholder, however, stands ready and willing to advance funds to satisfy the secured tax claims so as to obviate their consideration under any plan, with the exception of a plan that provides for their full, timely, and/or immediate payment when they become payable.  Moreover, and contrary to the Plan and Disclosure Statement, the Noteholder has already made advances to satisfy fully the 2012 property taxes.

[9] *Beal Bank, SSB. v. Water's Edge Ltd. P'ship (In re Beal Bank, SSB)*, 248 B.R. 668, 691 (D. Mass. 2000) (noting that impairment solely to satisfy § 1129(a)(10) of the Bankruptcy Code is impermissible absent a sound business justification); *see also In re Club Assocs.*, 107 B.R. 385, 401 (Bankr. N.D. Ga. 1989), *aff'd*, 956 F.2d 1065 (11th Cir.

20.     Fourth, the Property was set for a foreclosure sale on the eve of the Petition Date. Fifth, this bankruptcy filing was the only means available to the Debtor to prevent the foreclosure sale.  Sixth, it is undisputed that the Debtor has no employees.  Seventh, and lastly, as will be shown in more detail below, the Debtor cannot confirm this Plan or any plan over the Noteholder's objection.  In light of the foregoing, evidence of a bad faith filing is abundant.

### (b)     Bad Faith Plan Filing

21.     As set forth in note 8 *supra*, the Debtor's cash position as set forth in the May 2013 MOR and Budget attached to the Cash Collateral Extension, clearly establishes its ability to comfortably satisfy all unsecured claims immediately, in full, and with interest.  Yet, the Debtor refuses to do so and provides no business justification for failing to do so in an ostensible effort to artificially impair the unsecured creditor class in the hope of obtaining an impaired accepting class for cram down purposes.  This is plain evidence of bad faith in filing the Plan. *See W. Real Estate Equities, L.L.C. v. Village at Camp Bowie I, L.P.* (*In re Village at Camp Bowie I, L.P.*), 710 F.3d 239, 248 (5th Cir. 2013) (rejecting the notion that artificial impairment constitutes bad faith as a matter of law, but noting that "[w]e do not suggest that a debtor's methods for achieving literal compliance with § 1129(a)(10)[, including artificial impairment,] enjoy[s] a free pass from scrutiny under § 1129(a)(3) . . . . Ultimately, the § 1129(a)(3) inquiry is fact specific, fully empowering the bankruptcy courts to deal with chicanery."); *supra* note 9.  More evidence of bad faith exists insofar as the Disclosure Statement and Plan set forth the Debtor's attempt to impermissibly recognize the votes of Class 4 Insider Unsecured Claims in violation of § 1129(a)(10) of the Bankruptcy Code.

---

1992); *In re Meadow Glen Ltd.*, 87 B.R. 421, 425-27 (Bankr. W.D. Tex. 1988) (citing *Brite v. Sun Country Dev., Inc.* (*In re Sun Country Dev., Inc.*), 764 F.2d 406, 408 (5th Cir. 1985)) (noting that impairment solely for the purpose of confirmation is an abuse of the Bankruptcy Code and constitutes cause for stay relief).

22.     The Debtor's efforts to artificially impair secured tax creditors is also improper and indicative of bad faith given that the Plan provides for the statutory treatment afforded to secured tax claimants under § 1129(a)(9)(D) of the Bankruptcy Code, and therefore, the **Plan** does not alter those parties' rights sufficient to establish impairment. *See* 11 U.S.C. § 1124 (noting that impairment is based on treatment afforded in a **plan**, not treatment that is statutorily prescribed by the **Bankruptcy Code**); Plan, § 5.02; Disclosure Statement, § 3; *see also In re EQK Bridgeview Plaza Inc.,* 2011 WL 2458068, at *2 (Bankr. N.D. Tex. June 16, 2011) ("[A]ssuming [that] such claims are receiving the treatment statutorily prescribed by Section 1129(a)(9)(D)[,]. . . . the tax claimants cannot object to such treatment . . . ."). The Plan's requirement that the secured tax claimants receive full payment within five (5) years at the rate of interest prescribed under non-bankruptcy law certainly falls within the ambit of the treatment afforded under § 1129(a)(9)(D), which permits identical treatment. *See* 11 U.S.C. § 1129(a)(9)(D); *In re G.L. Bryan Invs., Inc.*, 340 B.R. 386, 390 n.7 (Bankr. D. Colo. 2006) ("Alteration of rights by way of the Bankruptcy Code or other statute is not an impairment.").

23.     As such, by providing secured tax claimants with the treatment afforded under § 1129(a)(9)(D), the **Plan** itself in no way impairs such claimants' rights under § 1124, but rather provides them treatment that is well within the rights afforded under the Bankruptcy Code.[10] As such, the Debtor's attempt to artificially impair the secured tax claims is misguided, plainly impermissible under the Bankruptcy Code, indicative of bad faith, and cannot be permitted. Notwithstanding the foregoing, the Debtor's Plan is facially unconfirmable on several grounds

---

[10] The Plan also permits secured tax claimants to retain all liens they may have on the Property and provides for interest on their claims at the applicable non-bankruptcy rate(s) as required by § 1129(a)(9)(D) of the Bankruptcy Code.  In sum, if there is any impairment of secured tax claimants' rights, such impairment is not effected by the Plan, but rather has been effected by the Bankruptcy Code. *See* 11 U.S.C. § 1124; *G.L. Bryan Invs., Inc*., 340 B.R. at 390 n.7.

and the Debtor lacks the ability to propose a confirmable plan and reorganize within a reasonable time in light of Noteholder's objections.

    **(ii)**    <u>**The Plan is not Fair and Equitable to the Noteholder as Required by § 1129(b) and Fails the Feasibility Test of § 1129(a)(11) of the Bankruptcy Code**</u>

24.    The Debtor's Plan proposes to cram down Noteholder's secured claim by ostensibly reinstating the Note and providing for monthly principal and interest payments of $35,891.56, while deaccelerating the loan and eliminating the pre-payment/yield maintenance premium, and retaining the current February 1, 2017 maturity date. *See* DS, § 3 and Exhibit A; Plan, § 5.03; **Exhibit A**. At the same time, the Debtor proposes to pay past-due arrearage amounts over six (6) years, which results in a final payment occurring in approximately 2019, more than two years after the Note matures. *See* DS, § 3 and Exhibit A; Plan, § 5.03. Additionally, Exhibit A to the Disclosure Statement reflects a re-payment schedule that extends through 2037. *See* DS, § 3 and Exhibit A; Plan, § 5.03.

25.    The Debtor has not proposed to offer the Noteholder separate debt instruments, yet has bifurcated the Secured Debt into two separate payment streams with different maturity dates. Indeed, on the one hand, the Disclosure Statement claims to reinstate the Note with the maturity date remaining intact, while at the same time proposes to continue paying past-due amounts well beyond the maturity date. These provisions are inconsistent and confusing. Notwithstanding that the Plan and Disclosure Statement improperly reflect and altogether omit portions of the Noteholder's Pre-Petition Indebtedness, even assuming *arguendo* the veracity of the Debtor's figures, which the Noteholder disputes, the proposed Plan payments would leave an approximately $3.9 million balloon payment due and owing at maturity. *Id.* Further, the Disclosure Statement and Plan are completely devoid of any financial projections whatsoever, let alone any projections that could possibly support the Plan's proposals.

26.     In light of these figures, the Debtor's current Budget and history, and lack of post-confirmation operational projections, satisfying this balloon payment appears unlikely and does not satisfy the feasibility requirement of § 1129(a)(11) of the Bankruptcy Code. *See In re Lakeside Global II, Ltd.*, 116 B.R. 499, 506 (Bankr. S.D. Tex. 1989).[11]  Instead, the Debtor's goal seems to be to hold on to the Property and hope that it can sell the same at a profit prior to the maturity date.  However, forcing the Noteholder to bear all the risk in the interim is patently inequitable and does not comport with the principles, including § 1129(a)(1) or (b), of the Bankruptcy Code. *See, e.g., In re 234-6 W. 22nd St. Corp.*, 214 B.R. 751, 760 (Bankr. S.D.N.Y. 1997) ("A debtor shows bad faith when it uses bankruptcy protection for risk-free speculation in the single asset.").

27.     In sum, this Debtor has no real opportunity to reorganize.  Saddling the Noteholder with the proposed burdens and the risk accompanying the Debtor's possible failure to satisfy the balloon payment within four or six (6) years is patently unjust, as is the Plan's essentially using the Bankruptcy Code and unsecured creditors as pawns in an attempt to effect this result. *See Aetna Realty Investors, Inc. v. Monarch Beach Venture, Ltd.* (*In re Monarch Beach Venture, Ltd.*), 166 B.R. 428, 436 (C.D. Cal. 1993) ("When the proposed distribution would substantially shift the risk of failure of the plan from a junior class to a senior dissenting class for no legitimate purpose, the plan is not fair and equitable to the dissenting class."); *In re Prussia Assocs.*, 322 B.R. 572, 595-603 (Bankr. E.D. Pa. 2005) (finding the debtor's plan

---

[11] To prove feasibility, the Debtor must have concrete evidence that sufficient cash exists to fund its Plan. *See Pan Am Corp. v. Delta Air Lines, Inc.*, 175 B.R. 438, 508 (S.D.N.Y. 1994).  "The purpose of the feasibility requirement is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." *In re Lakeside Global II*, 116 B.R. at 507.  A bankruptcy court cannot confirm a plan "where the financial realities do not accord with the proponent's projections or where the proposed assumptions are unreasonable." *Id.*  An essential issue in assessing the feasibility of a plan of reorganization is whether the debtor can generate sufficient cash flow to fund and maintain both its operations and obligations under the plan. *See In re Trevarrow Lanes, Inc.*, 183 B.R. 475, 482 (Bankr. E.D. Mich. 1995).  A plan must specifically demonstrate that its projections for future earnings and expenses are derived from realistic assumptions and that the debtor will have the ability to satisfy the proposed plan payments. *See In re Rivers End Apartments, Ltd.*, 167 B.R. 470, 476 (Bankr. S.D. Ohio 1994).

unconfirmable where insiders immediately retained their interests upon confirmation, while the mortgagee was forced to wait for a balloon payment due after seven (7) years, which unfairly and inequitably shifted the risk of plan failure to the mortgagee for no legitimate purpose and in violation of the broad equitable considerations allowed under § 1129(b)(1) of the Bankruptcy Code, the parameters of which exist and must be satisfied independently of those set forth in § 1129(b)(2)); *In re Seatco, Inc.*, 259 B.R. 279, 288 n.12 (Bankr. N.D. Tex. 2001) (quoting *Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd., II* (*In re Briscoe Enters., Ltd., II*), 994 F.2d 1160, 1168 (5th Cir. 1993)) (noting that "'technical compliance with one of the three options in 1129(b)(2)(A) may not necessarily satisfy the fair and equitable requirement.'").

### (iii)    <u>Creditor Dissent and Improper Classification and Impairment</u>

28.    It is also clear that the Debtor will not be able to confirm any alternative plan that rectifies the above issues over the Noteholder's objection given that the Noteholder has purchased the claims held by Champion Energy Services (Claim No. 2, $12,601.23) and the City of Waco, Texas ($1,774.89), which claims provide the Noteholder with control of the unsecured creditor class, thereby making a cram down impossible.[12]  Moreover, because the Noteholder's claim is undersecured, it will have an unsecured deficiency claim against the Debtor in the amount of at least $850,000, thereby further precluding the acceptance of any cram down plan by the unsecured creditor class, which the Debtor has failed to account for in violation of § 1122 of the Bankruptcy Code. *See* 11 U.S.C. § 1126(c); paragraph 35 *infra*; *supra* note 11.

29.    Furthermore, to the extent the Debtor believes the Noteholder is oversecured, the Plan fails to account for post-petition amounts due and owing to the Noteholder pursuant to §

---

[12] Noteholder has filed substantially contemporaneously herewith its Notices of Claims Transfers Pursuant to Bankruptcy Rule 3001(e)(2) pertaining to the Champion Energy and City of Waco, Texas unsecured claims.  The unsecured creditor class consists of approximately $30,600.00 worth of claims, with the Noteholder holding approximately $14,300.00 worth of the same, or approximately 46.7%, which is more than enough to prevent acceptance of the Plan by claimants holding at least two-thirds of the dollar amount of the claims. *See* 11 U.S.C. § 1126(c).

506(b) of the Bankruptcy Code or otherwise, which violates § 1122 of the Bankruptcy Code. Additionally, contrary to the Disclosure Statement, the Class 4 Unsecured Insider claimants' votes are not considered for purposes of acceptance by an impaired class. *See* 11 U.S.C. § 1129(a)(10).  Thus, given that Secured Tax Claims are not properly impaired, the Noteholder is effectively the sole impaired creditor in this case.   Because the Debtor cannot confirm a plan in a reasonable time over the Noteholder's objection, the Court should grant Noteholder relief from the automatic stay for cause pursuant to § 362(d)(1) of the Bankruptcy Code. [13]

### (iv)   The Plan is not Confirmable because it Incorporates Non-Consensual Injunctions in Favor of Non-Debtor Third Parties

30.    Section 1129(a)(3) of the Bankruptcy Code provides that "[t]he court shall confirm a plan only if . . . the plan has been proposed in good faith and not by a means prohibited by law." 11 U.S.C. § 1129(a)(3).  Here, the Plan provides that "On and after the Effective Date, all holders of Claims and Equity Interests shall be precluded and enjoined from asserting any Claim (i) against the Debtor, the Reorganized Debtor, its successors, officers, directors, affiliates or its assets and properties based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan; and (ii) any derivative claims, including claims against third parties asserting alter ego claims, fraudulent transfer claims or any other type of successor liability." Plan, § 9.01.  This provision would enjoin the Noteholder from pursuing its state law rights against non-Debtor third parties after the confirmation of the Plan,

---

[13] *See, e.g., In re Woodbrook Assocs.*, 19 F.3d 312, 316-17 (7th Cir. 1994) (affirming dismissal of a Chapter 11 case, in part, because a major creditor voiced its refusal to vote for any plan that did not pay it in full); *Canal Place Ltd. P'ship v. Aetna Life Ins. Co.* (*In re Canal Place Ltd. P'ship*), 921 F.2d 569, 576 (5th Cir. 1991); *Sun Valley Newspapers, Inc. v. Sun World Corp.* (*In re Sun Valley Newspapers, Inc.*), 171 B.R. 71, 75 (B.A.P. 9th Cir. 1994) (cause for stay relief established based on debtor's inability to confirm a plan after several months); *In re Fall*, 405 B.R. 863, 871 (Bankr. N.D. Ohio 2009) (dismissing a Chapter 11 case where a proposed plan was "likely to be met" with resistance from certain secured creditors and stood "a reasonable chance of meeting resistance" from unsecured creditors); *In re King*, 305 B.R. 152, 175 (Bankr. S.D.N.Y. 2004) (cause for stay relief established based on, *inter alia*, debtor's failure to propose a plan after several months); *In re Daly*, 167 B.R. 734, 736-37 (Bankr. D. Mass. 1994) (cause for stay relief established based on, *inter alia*, debtor's inability to confirm a plan over secured lender's objection); *In re Ledges Apartments*, 58 B.R. 84, 87-88 (Bankr. D. Vt. 1986) (dismissing a Chapter 11 case where, among other things, the two largest secured creditors indicated that they would reject the debtor's proposed plan and, therefore, "rehabilitation is an impossible dream.").

despite the maturity of the obligations and the risk to which Noteholder is being exposed through the extension of the Note.  The extraordinary protections being afforded to the primary guarantors would shield them from their contractual liabilities and permit them to place assets beyond the reach of the Noteholder, and thereby make themselves judgment proof, cannot and should not be approved by this Court.

31.    The Fifth Circuit and the United States Bankruptcy Courts for the Northern and Southern Districts of Texas have held that bankruptcy courts are prohibited from confirming a reorganization plan that provides injunctions in favor of non-debtor third parties who are not entitled to discharge under § 524(e) of the Bankruptcy Code. *See, e.g.*, *In re Bigler, LP*, 442 B.R. 537, 546 (Bankr. S.D. Tex. 2010) (citing *Bank of N.Y. Trust Co. v. Official Unsecured Creditors' Comm.* (*In re Pac. Lumber Co.*), 584 F.3d 229, 253 (5th Cir. 2009)); *In re Pilgrim's Pride Corp.*, No. 08-45664-DML-11, 2010 Bankr. LEXIS 72, at *11-13, *16 (Bankr. N.D. Tex. Jan. 14, 2010).  Additionally, courts considering the power of bankruptcy courts to grant injunctions in favor of non-debtor third parties pursuant to § 105(a) of the Bankruptcy Code have repeatedly found that such injunctions cannot last past the confirmation of a debtor's plan. *See Coronado City Views, LLC v. Regatta Bay, LLC* (*In re Regatta Bay, LLC*), No. CV-09-0874-PHX-ROS, 2009 WL 5730501, at * 2, *4 (D. Ariz. Oct. 30, 2009) (holding that the bankruptcy court erred in confirming a plan of reorganization that enjoined creditors from taking actions against guarantors while the debtor was making payments under the plan because no authority existed for such an injunction under the Bankruptcy Code and injunctions granted pursuant to § 105(a) cannot last past the confirmation of a debtor's plan); s*ee also Solidus Networks, Inc. v. Excel Innovations, Inc.* (*In re Excel Innovations, Inc.*), 502 F.3d 1086, 1095 (9th Cir. 2007) (holding that the maximum injunctive relief that a bankruptcy court can grant a non-debtor third party is through the confirmation of the debtor's plan of reorganization); *Abel v. Landsing Diversified Props.-II*

(*In re W. Real Estate Fund, Inc.*), 922 F.2d 592, 601-02 (10th Cir. 1990) (holding that injunctions in favor of non-debtor third parties cannot last past the confirmation of the debtor's plan); *Am. Hardwoods, Inc. v. Deutsche Credit Corp.* (*In re Am. Hardwoods, Inc.*), 885 F.2d 621, 624-27 (9th Cir. 1989) (holding that bankruptcy courts lack the power to issue injunctions that outlast plan confirmation).

32.     The extraordinary protections provided to the guarantors and principals of the Debtor under the Plan are contrary to law because such injunctions: (i) are granted in favor of a non-Debtor third party that is not entitled to discharge under § 524(e) of the Bankruptcy Code; and, (ii) would extend past the confirmation of the Plan.  The Plan is, therefore, unconfirmable because it proposes a means of implementation that is prohibited by law. *See* 11 U.S.C. § 1129(a)(1), (3).  Because the Debtor's Plan is unconfirmable and, as explained above, the Debtor will be unable to confirm a plan within a reasonable time, cause exists to grant Noteholder relief from the automatic stay pursuant to § 362(d)(1) of the Bankruptcy Code. *See United Sav. Ass'n. of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 376 (1988) ("[T]here must be 'a reasonable possibility of a successful reorganization within a reasonable time.'").

  **(v)**  <u>**Mismanagement and Failure to Pay Debt Service and Taxes**</u>

33.     Cause for stay relief also exists because the Debtor's principals' (mis)management of funds generated by the Property has led the Debtor to insolvency.  The Debtor's 2012-2013 financial reporting reflects that the Debtor generated sufficient funds to make debt service payments required under the Loan Documents, including escrowing for taxes and insurance, and to pay for all normal maintenance at the Property. *See generally* Debtor's 2012-2013 Financial Reporting and Rent Roll.  A true and correct copy of the Debtor's 2012-2013 Financial Reporting and Rent Roll is attached hereto as **Exhibit Q** and incorporated herein for all purposes.

34.     However, the Debtor failed to make a single debt service payment to the Noteholder after approximately May 2012 and also failed to appropriately escrow amounts for taxes and insurance since that time. *See generally* **Exhibit P**.  As a result, the Debtor failed to pay the 2012 *ad valorem* taxes, which forced the Noteholder to satisfy the same in order to protect its interest in the Property.  This trend of mismanagement has continued into the bankruptcy case as the Debtor continues to inexplicably fail to escrow amounts for 2013 property taxes.  Such actions needlessly place the Property and Collateral at risk and constitute grounds for stay relief under § 362(d)(1) of the Bankruptcy Code.

**B.     <u>Section 362(d)(2) – No Equity and Property is Not Necessary for an Effective Reorganization</u>**

35.     The Court should lift the automatic stay pursuant to § 362(d)(2) of the Bankruptcy Code because the Debtor has no equity in the Property and the Property is not necessary for an effective reorganization. *See* 11 U.S.C. § 362(d)(2); *see also Canal Place Ltd.*, 921 F.2d at 576 (5th Cir. 1991); *Hoyt, Inc. v. Born* (*In re Born*), 10 B.R. 43, 45 (Bankr. S.D. Tex. 1981) ("If it is established that the . . . debtor has no equity in the property and if the property is not necessary to an effective reorganization, the court *must* dissolve the stay.") (emphasis added).Courts that have considered the "effective reorganization" requirement have held that the debtor must show a "reasonable prospect for a successful reorganization within a reasonable time before allowing the stay to remain in effect." *Canal Place Ltd. P'ship*, 921 F.2d at 577 (citing *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.* (*In re Timbers of Inwood Forest Assocs., Ltd.*), 808 F.2d 363, 370 (5th Cir. 1987) (en banc), *aff'd*, 484 U.S. 365 (1988)).  Indeed, "[t]he reference to an 'effective' reorganization should require relief from the automatic stay if there is no reasonable likelihood of reorganization due to creditor dissent or feasibility considerations." *Id.* at 576 (citation omitted); *see also NCNB Tex. Nat'l Bank v. Brighton Co.* (*In re Brighton*

*Co.*), 123 B.R. 745, 746 (Bankr. N.D. Tex. 1990) (terminating the automatic stay because the debtor had no equity in the property and such property was not necessary to an effective reorganization because the proposed plan contemplated and called for foreclosure of the property); *Ables v. Major Funding Corp.* (*In re Major Funding Corp.*), 82 B.R. 443, 449-50 (Bankr. S.D. Tex. 1987) (lifting the automatic stay where the debtor had no equity in the property and rehabilitation of the debtor was impossible); *In re Pac. Tuna Corp.*, 48 B.R. 74, 78 (Bankr. W.D. Tex. 1985) (lifting the automatic stay where the debtor had no equity in the property and the evidence at trial clearly indicated that "there was no reasonable possibility that [the debtor] could, if its plan were implemented, operate profitably.").

36.     The evidence will show that the Debtor has no equity in the Property.  The Noteholder's appraisal dated as of April 29, 2013 reflects a value of $5.75 million for the Property, which is well below the approximately $7.9 million Pre-Petition Indebtedness, and results in an approximate $2.25 million deficiency.  Notwithstanding these figures, the Noteholder's deficiency is still approximately $850,000 if the pre-payment premium is omitted.  Because Noteholder has an undisputed first-priority lien[14] that far outstrips the value of the Property, no creditors would be harmed by lifting the stay because no unsecured creditors could recover ahead of the Noteholder under any circumstances.

37.     As such, Noteholder has met its burden and the Debtor must prove that the Property is necessary for an effective reorganization—in other words, that there is a "reasonable prospect for a successful reorganization within a reasonable time." *Canal Place Ltd. P'ship*, 921 F.2d at 577.  The Debtor has not satisfied and cannot satisfy this burden in light of its financial situation, inability to confirm a Chapter 11 plan, and failure to account for Noteholder's unsecured deficiency claim. *See supra* Part A.  Based on the foregoing, the Court should lift the

---

[14] *See* Cash Collateral Order, ¶ G.

automatic stay pursuant to § 362(d)(2) of the Bankruptcy Code in order to permit Noteholder to exercise its rights under the Loan Documents and applicable non-bankruptcy law as it relates to the Property and Collateral.

**C.     Waiver of Bankruptcy Rule 4001(a)(3) Stay**

38.     Cause exists to lift the fourteen-day stay of Bankruptcy Rule 4001(a)(3). Removing the fourteen-day stay is an appropriate remedy to allow Noteholder to immediately exercise its rights and remedies against the Property and Collateral, including, without limitation, foreclosure, in order to prevent further diminution of Noteholder's interests.

39.     Noteholder further reserves all rights and remedies available under applicable law, including, but not limited to such rights provided under the Loan Documents, and further reserves the right to supplement or amend this Motion and/or raise further objections to the Plan and/or Disclosure Statement prior to any hearing on the Motion, Disclosure Statement, or Plan.

## PRAYER

Noteholder respectfully requests that this Court grant it relief from the automatic stay pursuant to § 362(d)(1) and (2) of the Bankruptcy Code, and Bankruptcy Rules 4001(a)(1) and (a)(3), in order to allow Noteholder to take any and all steps necessary to exercise its rights against the Property and Collateral, including, without limitation, immediately posting the Property for a foreclosure sale to occur in September 2013 or later, and foreclosing on the Property and Collateral and applying the proceeds from a foreclosure sale of the Property and Collateral to the outstanding indebtedness due under the Loan Documents in the event that the Conditions are not met.  Noteholder also requests such other and further relief as this Court deems just and proper, both at law and in equity.

**DATED: July 15, 2013**

Respectfully submitted,

**WINSTEAD PC**
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
(713) 650-8400 (Telephone)
(713) 650-2400 (Facsimile)

By: _____*/s/ Sean B. Davis*_____
Joseph G. Epstein
Texas Bar No. 06639320
S.D. Tex. No. 11733
Sean B. Davis
Texas Bar No. 24069583
S.D. Tex. No. 1048341

**ATTORNEYS FOR JPMCC 2007-CIBC19 WACO RETAIL, LLC**

## Certificate of Conference

Pursuant to BLR 4001-1(a)(1), I hereby certify that on July 11 and 12, 2013, I communicated with Johnie J. Patterson, counsel of record for the Debtor, via e-mail, to confer regarding the progress of the Chapter 11 case and the reasons for filing a motion for relief from stay. The parties were unable to reach a resolution regarding the same.

_____*/s/ Sean B. Davis*_____
One of Counsel

## Certificate of Service

I hereby certify that on July 16, 2013, the foregoing document was served via first class U.S. Mail to the parties listed below. Additionally, notice of this document will be electronically mailed to the parties registered or otherwise entitled to receive electronic notices in these cases pursuant to the Electronic Filing Procedures in this District.

_____*/s/ Sean B. Davis*_____
One of Counsel

**Debtor and Debtor's Counsel:**
SWB River Square Center Partners, L.P.
c/o Johnie J. Patterson
Walker & Patterson, P.C.
P.O. Box 61301
Houston, Texas 77208-1301

**U.S. Trustee:**
Nancy L. Holley
OFFICE OF THE U.S. TRUSTEE
515 Rusk St., Suite 3516
Houston, Texas 77002

McClennan County, Texas et al.
c/o Diane W. Sanders
Linebarger Goggan Blair & Sampson, LLP
P.O. Box 17428
Austin, Texas 78760

City of Waco, Texas and Waco Independent
School District, et al.
c/o Lee Gordon
McCreary Veselka Bragg & Allen PC
P.O. Box 1269
Round Rock, Texas 78680

Internal Revenue Service
P.O. Box 7346
Philadelphia, Pennsylvania 19101-7346

Champion Energy Services, LLC
1500 Rankin Road, Suite 200
Houston, Texas 77073

Challenge Greater Waco Fund
P.O. Box 1220
Waco, TX 76701

Discovery Healthcare
215 Mary St., Suite 302
Waco, TX 76701

Trojan Cork & Keg
215 Mary St., Suite 102
Waco, TX 76701

City Of Waco Fiscal Services
P.O. Box 2570
Waco, TX 76702

CFWW
215 Mary St., Suite 301
Waco, TX 76701

Barby Williams
215 Mary St., Suite 101
Waco, TX 76701

Gage Telecom
215 Mary St., Suite 309
Waco, TX 76701

Unger & Associates
215 Mary St., Suite 304
Waco, TX 76701

The Nelson Law Firm
215 Mary St., Suite 310
Waco, TX 76701

The Scott Riddle Agency
215 Mary St., Suite 307
Waco, TX 76701

City Of Waco
P.O. Box 2649
Waco, TX 76702

LAN - Lockwood
215 Mary St., Suite 305
Waco, TX 76701

All Around Maintenance & Janitorial
P.O. Box 20821
Waco, TX 76702

Lawns Ltd.
1824 Austin Ave.
Waco, TX 76701

T&G Chemical & Supply
3328 Franklin Ave.
Waco, TX 76710

Alarm Center, Inc.
P.O. Box 7654
Waco, TX 76714-7654

Centroplex Service Co., Inc.
302 N. Robinson Dr.
Waco, TX 76706

Central Texas Commercial R.E. Svcs.
213 Old Hewitt Rd.
Woodway, TX 76712

Centex Carpet & Interiors
P.O. Box 2183
Waco, TX 76701