IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SWB RIVER SQUARE CENTER PARTNERS, LP | § § | CASE NO. 13-30009-H1-11 (Chapter 11) |
| | § | |
| DEBTOR | § | |

**DEBTOR'S *AMENDED* DISCLOSURE STATEMENT
FOR SWB RIVER SQUARE CENTER PARTNERS, LP**

**SWB River Square Center Partners, LP,** the Debtor in this Bankruptcy Case, files this Amended Disclosure Statement pursuant to the provisions of 11 U.S.C. § 1125.

**NEITHER THIS DISCLOSURE STATEMENT NOR THE CHAPTER 11 PLAN HAS BEEN APPROVED BY THE COURT AS CONTAINING ADEQUATE INFORMATION UNDER SECTION 1125(b) OF THE BANKRUPTCY CODE. ALL CREDITORS HAVE THE RIGHT TO OBJECT TO THIS DISCLOSURE STATEMENT AS NOT CONTAINING ADEQUATE INFORMATION AS REQUIRED BY SECTION 1125(b).**

**I.**

**INTRODUCTION**

"Plan" means the accompanying Chapter 11 Plan of Reorganization. Information contained in this Disclosure Statement summarizes the Plan and should not be solely relied upon for voting purposes. Creditors and Interest Holders are urged to read the Plan carefully and are further urged to consult with their counsel in order to understand the Plan fully. The Plan is a legally binding document.

**IN THE OPINION OF THE DEBTOR, THE TREATMENT OF CREDITORS AND THE INTEREST HOLDERS UNDER THE PLAN PROVIDES A GREATER CHANCE OF RECOVERY THAN THAT WHICH IS LIKELY TO BE ACHIEVED UNDER OTHER ALTERNATIVES REGARDING THE REORGANIZATION OR LIQUIDATION OF THE DEBTOR. ACCORDINGLY, THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN WOULD BE IN THE BEST INTERESTS OF CREDITORS, AND RECOMMENDS ACCEPTANCE OF THE PLAN.**

**1.01 REPRESENTATIONS.**

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED SOLELY FOR THE BENEFIT OF CREDITORS AND INTEREST HOLDERS OF THE DEBTOR. NO REPRESENTATIONS CONCERNING THE PLAN ARE AUTHORIZED OTHER THAN THOSE SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATION OR INDUCEMENT THAT IS NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR THE DEBTOR, WHO WILL INFORM THE COURT, AND THE COURT WILL TAKE SUCH ACTION AS IT DEEMS APPROPRIATE.**

**THE PLAN PROPONENT DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.**

**THIS STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN. THE PLAN THAT ACCOMPANIES THIS DISCLOSURE STATEMENT IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT, AND EACH CREDITOR AND INTEREST HOLDER IS URGED TO REVIEW THE PLAN.**

**THE PLAN PROPONENT MAKES NO REPRESENTATIONS WITH RESPECT TO THE EFFECTS OF TAXATION (STATE OR FEDERAL) ON THE CREDITORS WITH RESPECT TO THE TREATMENT OF THEIR CLAIMS UNDER THE PLAN, AND NO SUCH REPRESENTATIONS ARE AUTHORIZED. ANY TAX INFORMATION CONTAINED HEREIN IS MADE FOR INFORMATION PURPOSES ONLY. PARTIES-IN-INTEREST ARE URGED TO SEEK THE ADVICE OF THEIR OWN PROFESSIONAL ADVISORS SHOULD THEY HAVE ANY QUESTIONS WITH RESPECT TO ANY TAXATION ISSUES.**

**THE CONFIRMATION OF THE PLAN DISCHARGES THE DEBTOR FROM ALL DISCHARGEABLE PRE-FILING DEBTS BY VIRTUE OF THE ORDER OF CONFIRMATION OR SECTION 1141(d) OF THE BANKRUPTCY CODE. IN ADDITION, OTHER RIGHTS OF CREDITORS MAY BE ALTERED BY THE PLAN. CONFIRMATION MAKES THE PLAN BINDING UPON ALL CREDITORS AND OTHER PARTIES-IN-INTEREST, REGARDLESS OF WHETHER OR NOT THEY HAVE ACCEPTED THE PLAN.**

**ALL INITIALLY CAPITALIZED WORDS USED IN THIS DISCLOSURE STATEMENT HAVE THE SAME DEFINITIONS SET OUT IN ARTICLE I OF THE PLAN.**

**1.02 Source of Information and Accounting Method.** The financial information contained in this Disclosure Statement was compiled primarily from information provided by disclosures previously made by the Debtor. Accounting is on a cash basis. The Debtor has and continues to maintain its books and records. No representation can be made as to the accuracy of the Debtor's previous disclosures.

**1.03 Explanation of Chapter 11.** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Upon filing of a Chapter 11 petition, Section 362 of the Bankruptcy Code provides for a temporary automatic stay of all attempts to collect claims that arose prior to the Filing Date, or otherwise to interfere with the Debtor's property or business, in order to permit the Debtor to attempt to reorganize.

Formulation of a Plan of Reorganization is the primary purpose of a Chapter 11 Reorganization Case. A Plan of Reorganization sets forth the means for satisfying the holders of all claims against, and interests in, a debtor. Confirmation of a Chapter 11 Plan of Reorganization requires that either (i) all classes of claims and interests entitled to vote accept the plan or (ii) that the plan be accepted by the holders of at least one impaired class of claims not counting the votes of claims held by "insiders" as that term is defined by the Bankruptcy Code and, that the Plan be confirmed as to each objecting class pursuant to section 1129(b) of the Bankruptcy Code (the so called "cramdown" provisions). In addition to the acceptance requirements of at least one impaired class, Section 1129 of the Bankruptcy Code contains additional criteria that must be satisfied before

a Bankruptcy Court may confirm a Plan of Reorganization. **See "Confirmation Standards and Procedures."**

Confirmation of the Plan under Chapter 11 will relieve the Debtor of liability for any and all of the Debtor's pre-confirmation debts except as provided in the Plan, the Confirmation Order, or Section 1141(d) of the Bankruptcy Code. Confirmation makes the Plan binding upon the Debtor and all Creditors, whether or not they have accepted the Plan.

**1.04 Procedure for Filing Proofs of Claim.** The Plan provides that Claims will be recognized only if evidenced by a filed proof of claim that is allowed by the Court, or if the Claim appears on the Debtor's schedules filed with the Court and is not listed as disputed, contingent or unliquidated. In addition, the Bankruptcy Code permits the Debtor to ask the Court to reject unexpired leases and executory contracts. The Plan provides that the party to any such lease or contract which is rejected must file a proof of claim for damages no later than thirty days after the entry of the Order authorizing rejection of the lease or contract. However, a previously unrecognized claim may be subsequently allowed and ordered paid by the Court. Debtor's schedules may be reviewed in the Office of the Clerk of the Bankruptcy Court during regular business hours.

**1.05 Voting.** In submitting this Disclosure Statement, The Plan Proponent is not seeking the acceptance of the Plan by the Creditors in Classes which are unimpaired by the Plan. Unimpaired Creditors are not entitled to vote on the Plan. Members of Classes which hold impaired claims are entitled to vote to accept or reject the Plan. If any Class elects to reject the Plan, Claims in that Class may be treated according to the cram-down provisions of section 1129(b) of the Bankruptcy code.

**1.06 Classes Impaired Under the Plan. Classes 1, 2, 3, 4 and 5 under the Plan are impaired and are eligible to vote to accept or reject the Plan subject to the limitations set forth in the Plan.**

II.

## THE CHAPTER 11 DEBTOR

**2.01 The Plan Proponent.** The Plan is proposed by the Debtor. The Debtor believes that the Plan as proposed is in the best interests of the creditors.

**2.02 The Debtor, Business Background and Events leading to Chapter 11 Filing**. The Debtor is SWB River Square Center Partners, LP. The Debtor owns a 92,874-square-foot mixed use project located in downtown Waco that includes ground floor restaurants, second floor retail (known as "The Shops at River Square") and 3rd story office space (the "Property"). The building was originally constructed in 1906 and was renovated in 1996 and 2007 (by the borrower) and is now considered a class "A" property - a focal point for night-life in downtown Waco.

The 2.399-acre site is located at 215 2nd street and 217 Mary Avenue and includes a 1.33-acre tract that is leased from the City of Waco and used for parking. The project was purchased by SWB River Square Center Partners, LP in January 2007 and is 93.0% leased to 17 tenants.

*The Debtor's Business and Capital Structure.*

The Debtor's Pre-petition Business.

SWB River Square Center Partners, LP, was organized on December 18, 2006 to acquire, maintain and operate the River Square Center, located at 215 Mary Ave., Waco, TX.

The Debtor's Capital Structure.

On January 26, 2007, the Debtor obtained a loan from CIBC Inc. in the original principal face amount of $6,880,000.00 (the "Secured Debt"). The Secured Debt was secured by the Property, leases and other collateral including limited guarantees of the principals of the Debtor. The Secured Debt remains outstanding at this time.

*The Debtor's Assets.*

On the Petition Date, the Debtor's sole real property asset was the Property.

On January 17, 2013, the Debtor filed with the Bankruptcy Court its Schedules of Assets and Liabilities and Statements of Financial Affairs (collectively, the "Schedules"). The Schedules contain a detailed listing of the Debtor's assets and the amounts owed to its Creditors based on the Debtor's books and records. In connection with this Disclosure Statement, Creditors and Interest Holders are referred to the Schedules. Copies of the Schedules are available from the Clerk's office or from the Debtor upon request.

*Events Leading to Bankruptcy.*

The Debtor is the owner of a three-story 92,874-square-foot former warehouse building located at 215 2nd Street & 217 Mary Avenue in Waco Texas that has been converted to retail, restaurant and office space and is currently considered a focal point for night life in downtown Waco. The project is 93.0% leased to 17 tenants and has adequate cash flow to service principal, interest, taxes, and insurance on an on-going basis.

The building was purchased by the Debtor in 2007 and renovated shortly thereafter. Despite what appeared to be a good faith transaction, the seller of the Property used his relationships with existing tenants to lure them into another building nearby that offered below market rates due to redevelopment incentives provided by the City of Waco. This resulted in tenant rollover of of over 50% within a 24-month period and lowered overall rents generally - the majority of re-tenanting income fell into 2010 and 2011.

Since the Debtor did not have adequate funds to cover the unexpected releasing costs, the principals covered the majority of these costs out-of-pocket. By late 2011, however, the cumulative effect of the drain caused the Debtor to be late on a couple of payments which resulted in the assessment of default interest and late fees. Even though the Debtor subsequently made payments in full and on time, LNR Partners (as special servicer for the Lender) applied the payments to default interest and late fees which left the loan constantly in default and subject to ever increasing late charges.

In late 2012, significant negotiations with the special servicer of the Secured Debt were had in order to resolve the outstanding defaults. The Debtor believed that a financial agreement had been reached, however the special servicer instead posted the Property for foreclosure for December, 2012. In order to preserve the value of the Property, the Debtor transfered approximately $290,000.00

*Disclosure Statement* - SWB River Square Center Partners, LP

toward payment of the Debt. The December foreclosure was passed with this payment, however the Property was once again posted for a January 2013 foreclosure. The Debtor did not have the funds to again meet the financial demands of the special servicer and this Chapter 11 was filed in an attempt to preserve the equity in the Property and to address all the Debtor's financial obligations.

*Post-Petition Events.*

Since the filing of the bankruptcy case, the Debtor has operated the Property, retaining all prepetition tenants. Significant events occuring during the Bankruptcy Case include:
- The United States Trustee was unable to appoint a creditors committee;
- Interim cash collateral orders were entered on a monthly basis, with a Final Cash Collateral Order entered on March 29, 2013.
- A Utility Order was entered by the Court on January 18, 2013, providing for reasonable deposits to utility providers and restricting their ability to terminate the Debtor's utilities.
- The Debtor filed its Plan and Disclosure Statement for consideration by the creditors.

*Financial Performance of the Debtor*

The Debtor's operations have remained stable over the last few years. The tenant base of the Debtor has been stable and there is no indication that operations will vary significantly in the future. As indicated by the Debtor's post-petition operating reports, The Debtor generates approximately $60,000.00 before debt service and taxes. See attached *Monthly Operating Report*.

**2.03 Debtor's Liabilities.** At the time the Debtor entered into the Bankruptcy, it owed the Secured Debt (secured by the Property), property taxes for 2012 and various unsecured debts, including debts to insiders. The Debtor had debts as follows at the time of filing the petition:

| Debt | $6,360,726.57[1] |
|---|---|
| Accrued & Unpaid Interest | $230,019.39 |
| Miscellaneous Fees | $79971.32 |
| TOTAL | $6,670,717.28 |
|  |  |
| 2012 Property Taxes |  |
| City Of Waco/Waco ISD | $115,990.69 |
| McLennan County | $0.00 |
| 2013 Property Taxes |  |
| City Of Waco/Waco ISD | $121,790.25 |
| McLennan County | $32,901.37 |
| General Unsecured Debt | $55,636.05 |
| Insiders | $223,875.04 |

---

[1] Principal balance.

*Disclosure Statement* - SWB River Square Center Partners, LP

**2.04 Anticipated Future and Management of Debtor.** The Debtor's Plan of Reorganization calls for

- The continued maintainance and operation of the Property by the Reorganized Debtor
- Modification and payment of the Secured Debt
- Payment of unpaid property taxes over time
- Payment Of Unsecured Claims in full, with interest over 36 months
- Current Managment by SWB River Square GP, LLC will continue post-confirmation

## III.

## SUMMARY OF THE PLAN

The following is a brief summary of certain provisions of the proposed Plan of Reorganization provided to assure that the creditors affected by the Plan understand its provisions. This summary should not be considered a solicitation for acceptance of that Plan. Additionally, creditors should not rely on this summary to decide whether or not to vote in favor of or against the Plan, but are expressly referred to the Plan itself since it contains many provisions which will not be summarized herein.

**3.01 Classification and Treatment of Creditors.** The Plan of Reorganization will provide for classification of creditors in accordance with the United States Bankruptcy Code.[2]

**Administrative Claims and Priority Tax Claims.** In accordance with § 1123(a)(l) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests.

Allowed Administrative Claims arising under 11 U.S.C. § 503(b) will be paid in Cash and in full by the Reorganized Debtor on the later of (a) the Distribution Date, (b) the date on which such Administrative Claim becomes an Allowed Claim; or (c) such other date as the Reorganized Debtor and the holder of the Allowed Administrative Claim shall agree.

Allowed Priority Tax Claims against the Debtor will be paid in Cash by the Reorganized Debtor on the later of (a) the Distribution Date; (b) the date on which such Priority Tax Claim becomes an Allowed Claim; or (c) such other date as the Reorganized Debtor and the holder of the Allowed Priority Tax Claim shall agree.

---

[2] The right to dispute or object to any/all of the claims listed in this Disclosure Statement is not waived by the listing, description, identification or other references. Debtor's listing of claim amounts is for informational purposes only and is not binding in future claim objection proceedings. The listed claim amounts are either from filed proofs of claim or Debtor's estimate of the claim as reflected in the Debtor's Schedules.

**Class 1 - Secured Property Tax Claims.** Class 1 is impaired. All Secured Property Tax Claims will be paid in full within sixty (60) months of the petition date. Specifically, each claim will be amortized over 48 months, with the first payment due thirty (30) days after the Effective Date of the Plan. 2012 taxes are past due and will accrue interest at 1% per month simple interest. 2013 taxes will accrue 0% interest through January 31, 2014 and the balance will accrue interest thereafter at 1% per month. Debtor will reserve the right to prepay any Class 1 Claim without penalty. The tax obligations included in Class 1 are:

| | |
|---|---|
| City Of Waco 2012 Taxes | $115,990.69 |
| City Of Waco 2013 Taxes | $121,790.25 |
| McLennan County 2013 Taxes | $32,901.37 |
| Total | $270,682.31 |

**Class 2 - JPMCC 2007-CIBC19 Secured Debt (the "Secured Debt")** - Class 2 is impaired. The Secured Debt will be deemed cured of all financial and non-financial defaults as of the Confirmation Date and the allowed prepetition claim shall be amortized over thirty (30) years at 5.50% from the Effective Date, with a balloon payment of the then outstanding principal balance, plus any accrued and unpaid interest, five (5) years from the Effective Date. The Secured shall retain it's lien on the Property until the modified debt is paid. Instruments evidencing the Secured Debt will be deemed modified at Confirmation, including the deletion of prepayment penalties or obligations. All inconsistent provisions in the debt instruments will be null and void at Confirmation. Debtor will reserve the right to prepay any Class 2 Claim without penalty. Escrow payments will resume in January 2014 for taxes due January 2015. All other escrow obligations are terminated.

| | |
|---|---|
| Outstanding Principal | $6,360,726.57 |
| Accrued Interest | $230,019.39 |
| Fees & Charges | $79,971.32 |
| **TOTAL** (Excludes "Pre-Payment/Yield Maintenance Premium") | **$6,670,717.28** |

**Class 3 - Unsecured Creditors.** Class 3 is impaired. The claims in this class consist of non-insider creditors asserting unsecured claims against the Debtor. Class 3 claimants will be paid 100% of their claim over 60 months with no interest. Distributions shall be on at least a quarterly basis. Debtor retains the right to prepay Class 3 Claims without penalty.

Class 3 claims are:

| | |
|---|---|
| Challenge Greater Waco Fund | $10,000.00 |
| Champion Energy Services, LLC | $12,601.23 |
| City of Waco | $1,275.63 |
| City of Waco Fiscal Services | $4,964.00 |
| **TOTAL** | **$28,840.86** |

**Class 4 - Administrative Convenience Class.** Class 4 is impaired. The claims in this class consist of unsecured claims less than $1,000.00. Claims included in Class 3 may elect to reduce their claim to $1,000.00 and be treated as a Class 4 claim if done so in writing before the Effective Date. Class 4 Claims will be paid in full, without interest, ninety (90) days after the Effective Date.

Class 4 claims are:

| Alarm Center, Inc. | $37.83 |
|---|---|
| All Around Maintenance & Janitorial | $638.68 |
| Lawns Ltd. | $499.97 |
| T&G Chemical & Supply | $75.76 |
| **TOTAL** | **$1,252.24** |

**Class 5 - Unsecured Insider Debt.** Class 5 is impaired. The claims in this class consist of unsecured claims of insiders. Class 5 Claims shall not receive a distribution on their claims until Class 3 Claims have been paid in full, and then only if the Debtor has sufficient funds after regular payments to Class 1 and Class 2 Claims and payment of ongoing operating expenses.

Class 5 claims are:

| WB Realty Group | $85,106.88 |
|---|---|
| WB Real Estate Holdings Co., LP | $138,768.16 |
| **TOTAL** | **$223,875.04** |

**Class 6 - Equity Interests.** Class 6 is unimpaired. Equity/Ownership interest in the Debtor shall not be affected by the confirmation of the Debtor's Plan. The prepetition Partnership Agreement shall remain in full force and effect. Ownership of the Debtor, after confirmation, is as follows:

| SWB River Square GP, LLC (General Partner) | 1.00% |
|---|---|
| WB Real Estate Holdings, LLC (Limited Partner) | 49.50% |
| Stonehenge Companies, LLC (Limited Partner) | 49.50% |

**Executory Contracts.** All executory contracts of the Debtor will be assumed.

**3.02 Retention of Jurisdiction.** Notwithstanding confirmation of the Plan, The Bankruptcy Court shall retain the exclusive jurisdiction over the Reorganization Case for the following purposes:

(a) to determine any and all objections to the allowance of Claims and Equity Security Interests;

(b) to determine any and all pending applications for the rejection or assumption of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine, and if necessary to liquidate, any and all Claims arising therefrom;

(c) to determine any and all applications, adversary proceedings and contested or litigated matters that may be pending on the Effective Date, or instituted by the Reorganized Debtor after the Effective Date, including, without limitation, any Claims arising under the Bankruptcy Code to avoid any preferences, fraudulent conveyances or other voidable transfers;

(d) to consider any modifications of the Plan, any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(e) to determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan or the execution and delivery of any Plan exhibit;

(f) to issue such orders in aid of execution of the Plan to the extent authorized by Section 1142 of the Bankruptcy Code;

(g) to determine such other matters which may be set forth in the Confirmation Order or which may arise in connection with the Plan or the Confirmation Order;

(h) to determine any and all pre-confirmation applications for allowances of compensation, entitled to priority under §507(a)(l) of the Code; and reimbursement of expenses and any other pre-confirmation fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan; and

(i) to determine if a default by the Reorganized Debtor has occurred under the Plan as Ordered by the Court and if default has occurred, to enter such Orders as are necessary and appropriate to ensure compliance with the Plan as confirmed and/or subsequently modified.

**3.03 Discharge of Debtor.** Except as otherwise provided herein, upon the Effective Date, all such Claims against the Debtor shall be satisfied. **All entities shall be precluded from asserting against the Debtor, its respective successor, its officers, directors, affiliates or its assets or properties any other or further Claims based upon any act or omission, transaction or other activity of the Debtor of any kind or nature that occurred prior to the Confirmation Date.**

**3.04 Title to Assets: Discharge of Liabilities.** Except as otherwise provided in the Plan, on the Effective Date, title to all assets and properties dealt with by the Plan shall vest in the Reorganized Debtor, in accordance with Section 1141 of the Bankruptcy Code, free and clear of all liens, claims and encumbrances except as provided in the Plan; and the Confirmation Order shall be a judicial determination of the liabilities of the Debtor.

**3.05 Forfeiture.** The Reorganized Debtor shall make distributions to Creditors at the addresses set forth on the Proofs of Claim filed by such Creditors or at their last-known addresses if no Proof of Claim is filed. If any Creditor's distributions are returned as undeliverable, no further distributions to such Creditor shall be made unless and until notification is received of such Creditor's

then current address, at which time, all missed distributions shall be made to such Creditor, without interest. The Reorganized Debtor shall be under no obligation to locate or contact any Creditor. All Claims for undeliverable distributions shall be made on or before the second anniversary of the Confirmation Date. Until such time, undeliverable distributions shall be retained. After such date, all unclaimed payments shall be disbursed to any remaining Allowed Claims and the Claim of any Creditor with respect to such payments shall be discharged and forever barred.

**3.06 Bar Dates For Filing Proofs of Claim.** The Debtor has filed as a part of its schedules a list of all creditors, setting forth the identity of each such creditor and an indication of the amount due each such creditor. Unless a claim is listed as disputed, contingent or unliquidated, each creditor's claim will be allowed in the amount and status stated on the schedules in absence of filing of a proof of claim in a different amount or status on May 14, 2013. Claims listed as disputed, contingent, or unliquidated will not be allowed unless a proof of claim with all supporting documents is filed prior to May 14, 2013. In the event a creditor has filed a proof of claim in these proceedings with which the Reorganized Debtor disagrees, the Reorganized Debtor shall file an objection to said claim.

Any proof of claim which is not timely filed shall be of no force and effect. No distribution will be made to any creditor that has not timely complied with this provision.

## IV.
## CONFIRMATION PROCEDURES AND STANDARDS

In order for the Plan to be confirmed, various statutory conditions must be satisfied, including (i) a finding by the Court that the Plan is feasible, (ii) the acceptance of the Plan by at least one impaired class entitled to vote on the Plan not counting insiders, and (iii) provision for payment or distribution to each claimant under the Plan of money and/or other property equal in value to at least what the claimant would have received in liquidation or, with respect to each Class, either acceptance by the Class or a finding by the Court that the Plan is "fair and equitable" and does not "discriminate unfairly" against the Class.

**4.01 Who May Vote.** Distributed along with the Disclosure Statement is a ballot on which Creditors and interest holders will vote to accept or reject the Plan. Only classes that are impaired under the Plan are entitled to vote on acceptance or rejection of the Plan. Generally, section 1124 of the Bankruptcy Code provides that a class of claims or interests is considered impaired unless a plan does not alter the legal, equitable, and contractual rights of the holder of the claim or interest. In addition, these classes are impaired unless all outstanding defaults, other than defaults relating to the insolvency or financial condition of the Debtor or the commencement of the Chapter 11 case, have been cured and the holders of the claims or interests in these classes have been compensated for any damages incurred as a result of any reasonable reliance or any contractual provisions or applicable law to demand accelerated payment.

Classes not impaired under the Plan, pursuant to section 1126(f) of the Bankruptcy Code, are deemed to have accepted the Plan without voting. All impaired classes under the Plan are entitled to vote to accept or reject the Plan. The classes of creditors impaired under the Plan are Classes 1, 2, 3, 4 and 5. As a result of the Debtor's proposed Plan, there are five (5) impaired classes.

**4.02 Requirements for Confirmation of the Plan.** At the Confirmation Hearing, the Court will determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied, in which event the Court will enter an order confirming the Plan. These requirements are

as follows:

      **(a) Feasibility of the Plan.** In order for the Plan to be confirmed, the Court must determine that a further reorganization or subsequent liquidation of the Debtor is not likely to result following confirmation of the Plan. The Plan Proponent believes that the Plan is feasible. All payments under the Plan are to be made out of assets already on hand and reasonably anticipated from continued operation.

      **(b) Best Interests Test.** With respect to each impaired class contemplated by Section 1129(a)(7)(A), each member must either (a) accept the Plan or (b) receive or retain under the Plan, on account of its Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount the holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

      To determine what the holders in each impaired class of Claims and Interests would receive if the Debtor were liquidated, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets and properties in a context of Chapter 7 liquidation case. The cash amount that would be available would consist of the proceeds resulting from the disposition of the Hotel and the related personal property, reduced by the costs and expenses of the liquidation and by such additional administration and priority expenses that may result from the termination of the Debtor's business and use of Chapter 7 for the purposes of liquidation.

      The costs of liquidation under Chapter 7 would include the fees payable to the trustee appointed in the Chapter 7 case, as well as those that might be payable to additional attorneys and other professionals that the trustee might engage. Costs of liquidation would also include any unpaid expenses incurred by the Debtor during the Chapter 11 case, such as compensation for attorneys, financial advisors, and accountants and costs and expenses of any committee, that are allowed in the Chapter 7 case. In addition, Claims may arise by reason of the breach of or rejection of obligations incurred and executory contracts entered into by the Debtor during the pendency of the Chapter 11 case.

      To determine if the Plan is in the best interests of each impaired class, the present value of the distributions from the proceeds of the liquidation of the Proponent's assets and properties (after subtracting the amounts attributable to the claims described above) are then compared with the present value offered to each of the classes of Allowed Claims and Allowed Interests under the Plan.

      In applying the "best interests" test, it is necessary to consider that Claims and Interests in a Chapter 7 case might not be classified in the same manner as provided in the Plan. In the absence of a contrary determination by the Bankruptcy Court, all allowed unsecured claims which have the same rights upon liquidation would be treated as one class for the purposes of determining the potential distribution of the liquidation proceeds resulting from a Chapter 7 case of the Proponent. The distribution of the liquidation proceeds would be calculated pro rata according to the amount of the allowed unsecured claim held by each Creditor in the class. The Plan Proponent believes that the most likely outcome of liquidation proceedings under Chapter 7 would be the application of the rule of absolute priority of distributions. Under that rule, no junior class of Creditors would receive any distribution until all senior classes of Creditors were paid in full with interest, and no Interest Holder would receive any distribution until all Creditors were paid in full with interest. Consequently, the Plan Proponent believes that in any Chapter 7 case, holders of Claims in all of the Classes would receive less than under the Plan.

In this case a Chapter 7 liquidation would likely result in significant loss of estate value due to the administrative expenses and delay caused by a Chapter 7 liquidation. This Chapter 11 plan is the most expedient and least costly method of distributing payments to creditors. Since a Chapter 7 Trustee would be unfamiliar with the facts pertaining to this case, the Trustee would be forced to spend significant time in processing this case and liquidating all assets before any distribution can be made to creditors. In addition, a Chapter 7 Trustee would bring an additional level of administrative expenses thereby further reducing the funds available for distribution to creditors. Confirmation of this Chapter 11 plan will maximize distribution to creditors and shorten the time for distribution.

**(c) Acceptance by Impaired Classes**. Section 1129(a)(8) of the Bankruptcy Code requires that, subject to the "cram-down" exception contained in section 1129(b), each impaired class must accept the Plan by the requisite votes for confirmation to occur. A class of impaired claims will have accepted the Plan if at least two-thirds in amount and more than one-half in number of Allowed Claims in the class voting to accept or reject the Plan have voted in favor of acceptance. A class of impaired Interests will have accepted the Plan if at least two-thirds in amount of the Allowed Interests in the class voting to accept or reject the Plan have voted in favor of acceptance. In addition, regardless of whether recourse is had to the cram-down provisions of section 1129(b), at least one impaired class must accept the Plan, without counting the votes of any "insiders" contained in the class, as defined in Section 101(31) of the Bankruptcy Code.

**(d) Cram-down.** If any impaired class of claims or interests does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Proponent pursuant to the cramdown provisions of Section 1129(b) if, as to such impaired class, the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to that class. A Plan does not discriminate unfairly if no class receives more than it is legally entitled to receive for its claims or equity interests. "Fair and equitable" has different meanings for secured claims, unsecured claims and interests.

With respect to a secured claim, "fair and equitable" means that either (i) the impaired secured creditor retains its liens to the extent of its allowed secured claims and receives deferred cash payments at least equal to the allowed amount of its claim with a present value as of the Effective Date of the Plan at least equal to the value of the creditor's interest in the property securing its liens, (ii) property subject to the lien of an impaired secured creditor is sold free and clear of the lien, with the lien attaching to the proceeds of the sale, or (iii) the impaired secured creditor realizes the "indubitable equivalent" of its claim under the Plan. With respect to an unsecured claim, "fair and equitable" means that either (i) each impaired unsecured creditor receives or retains property of a value equal to the amount of its Allowed Claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive or retain any property under the Plan.

With respect to an interest, "fair and equitable" means that either (i) each holder of an impaired interest in the class receives or retains property of a value equal to the greatest of the allowed amount of any fixed liquidation preference to which the holder is entitled, any fixed redemption price to which the holder is entitled, or the value of that interest or (ii) the holders of all interests that are junior to the interest of the dissenting class will not receive any property under the Plan.

The Bankruptcy Court must determine at the Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against any impaired class of Claims or Interests. The Plan Proponent believes that each holder of a Claim impaired under the Plan will receive payments under the Plan having a present value as of the Effective Date of an amount not less than

the amount likely to be received if the Debtor were liquidated in a case under Chapter 7 of the Bankruptcy Code. The Plan Proponent believes that the likely distribution to creditors through a Chapter 7 liquidation would be substantially less than as proposed under this Plan. At the Confirmation Hearing, the Bankruptcy Court will determine whether Creditors would receive greater distributions in a liquidation under Chapter 7 than they would under the Plan.

## V.
## SOURCE OF INFORMATION FOR THIS DISCLOSURE STATEMENT

The information contained herein has not been subject to a certified audit. Most of the information, descriptions, values and facts contained herein are derived from disclosure made by the Debtor during this bankruptcy proceeding. Accordingly, the Debtor does not warrant or represent that the information contained herein is correct, although great effort has been made to be accurate. This Disclosure Statement does not contain the Plan in its entirety, the Plan itself is controlling in the event of any inconsistencies. Each creditor is urged to review the Plan prior to voting.

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified herein and the delivery of this Disclosure Statement shall not under any circumstances create an implication that there has not been any change in the facts as set forth herein since the date hereof. All the terms herein have the same meanings as in the Plan unless the context requires otherwise.

## VI.
## PROFESSIONAL FEES

It is estimated that, as of the filing of this Disclosure statement and Plan, the amount of accrued professional fees is $30,000.00. No requests have been made to the Court by any professional requesting allowance of fees or costs.

The reorganized debtor shall be responsible for timely payment of United States Trustee quarterly fees incurred pursuant to 28 U.S.C. §1930(a)(6). Any fees due as of the date of confirmation of the plan will be paid in full on the Effective Date. After confirmation, the reorganized debtor shall pay United States Trustee quarterly fees as they accrue until this case is closed by the Court. The Reorganized Debtor shall file with the Court and serve on the United States Trustee monthly financial reports as long as this case remains open in a format prescribed by the United States Trustee.

## VII.
## PENDING LITIGATION

7.01 **General and Chapter 5 Causes of Action, Including But Not Limited to, Fraudulent and Preferential Transfers**

Any avoidance power actions will be retained by the Reorganized Debtor under the Plan. The Reorganized Debtor will be given the exclusive right to enforce any and all causes of action owned by the Debtor, including any causes of action which may exist under the Bankruptcy Code or state law. Any recoveries made from Avoidance Actions will be distributed to creditors as provided under the Plan. The Debtor does not believe that there are preference and fraudulent conveyance causes of action, however to the extent there are claims that upon further investigation exists against

creditors, prepetition insiders or others, including but not limited to payments and transfers disclosed in the Debtor's Statement Of Financial Affairs, those claims are specifically retained and may be pursued by the Reorganized Debtor. Schedule B also lists claims against the holder and servicer of the Secured Debt. Those claims are retained and may be pursued by the Reorganized Debtor.

## VIII.
## ALTERNATIVES TO THE PLAN

The Debtor expects that this Plan will enable the Reorganized Debtor to realize the most benefits for all of its creditors.

**CONVERSION:** In the event no suitable alternative could be found, the Debtor would be compelled, as well as obligated, to recommend the conversion of the Chapter 11 case to a case under Chapter 7, and a subsequent liquidation by a duly appointed or elected Chapter 7 trustee or dismissal of the bankruptcy case. Although the Debtor is of the opinion that a straight liquidation of the assets would not be in the best interest of the creditors generally, the following is likely to occur:

(a) The newly appointed Chapter 7 trustee would have to become familiar with the Debtor's operations in order to evaluate all the Debtor's assets and liabilities, including the numerous claims which are the subject of pre-petition litigation and all transactions which will serve as a basis for future litigation;

(b) In addition to the duplication of efforts that would transpire as a result of the Chapter 7 trustee having to review documents and interview persons in order to become sufficiently acquainted with Debtor's business, the Chapter 7 trustee would likely retain professionals to aid in administering the estate;

(c) An additional tier of administrative expenses entitled to priority over general unsecured claims would be incurred. Such administrative expenses would include Chapter 7 trustee's commissions and fees for the professionals likely to be retained; and

(d) There would likely be no distribution at all to the creditors until the case was ready to be closed. The Debtor will allow the creditors and parties-in-interest to draw their own conclusions with respect to the delay associated with such detriment. It is certain that the above factors would result in an additional dilution to the projected dividend. The Debtor believes that such a speculative projection should be made by the creditors themselves. The Debtor believes if the assets of the Debtor were liquidated through a Chapter 7 trustee there would be insufficient funds to result in any payment to unsecured creditors.

Dismissal of the proceeding would, in the judgment of Debtor, lead to an unsatisfactory result. Dismissal would result in numerous lawsuits to collect debts which would cause the Debtor to incur more expenses in the form of attorneys fees, etc., including the potential for the foreclosure of the Property.

The Debtor has attempted to set forth possible alternatives to the proposed Plan. Accordingly, one should recognize that a vote against the Plan and the ultimate rejection of the Plan would not alter the present status of the Debtor. The vote on the Plan does not include a vote on alternatives to the Plan. There is no assurance what turn the proceedings will take if the Plan is

*Disclosure Statement* - SWB River Square Center Partners, LP

Page 14

rejected. If you believe one of the alternatives referred to above is preferable to the Plan and you wish to urge it upon the Court, you should consult your counsel.

## IX.
## FEDERAL INCOME TAX CONSEQUENCES

The Debtor believes that the following discussion generally sets forth the Federal income tax consequences to Creditors upon confirmation and consummation of the Plan. No ruling has been sought or obtained by the Debtor from the Internal Revenue Service ("IRS") with respect to any of these matters. The following discussion of Federal income tax consequences is not binding on the IRS and is general in nature. No statement can be made herein with respect to the particular Federal income tax consequences to any Creditor.

**AS A RESULT OF THE COMPLEXITY OF THE APPLICABLE PROVISIONS OF THE INTERNAL REVENUE CODE, EACH CREDITOR IS URGED TO CONSULT ITS OWN TAX ADVISOR IN ORDER TO ASCERTAIN THE ACTUAL TAX CONSEQUENCES TO IT, UNDER FEDERAL AND APPLICABLE STATE AND LOCAL LAWS, OF CONFIRMATION AND CONSUMMATION OF THE PLAN.**

Creditors may be taxed on distributions they receive from the Estate. The amount of the income or gain, and its character as ordinary income or capital gain or loss, as the case may be, will depend upon the nature of the Claim of each particular Creditor. The method of accounting utilized by a Creditor for Federal income tax purposes may also affect the tax consequences of a distribution. In general, the amount of gain (or loss) recognized by any such Creditor distributes will be the difference between (i) the Creditor's basis for Federal income tax purposes, if any, in the Claim and (ii) the amount of the distribution received. Whether the distribution will generate ordinary income or capital gain will depend upon whether the distribution is in payment of a Claim or an item which would otherwise generate ordinary income on the one hand or in payment of a Claim which would constitute a return of capital.

## X.
## MODIFICATION OF DISCLOSURE STATEMENT

After confirmation, the proponent may, with the approval of the Court, so long as it does not materially or adversely affect the interests of the creditors or other parties- in-interest as set forth herein, remedy any defect or omission, reconcile any inconsistencies in this Disclosure Statement, or in the Order Approving Disclosure Statement, in such a manner as may be necessary to carry out the purposes and intent of this Disclosure Statement.

## XI.
## CONCLUSION

The Debtor believes that approval of its Plan will provide an opportunity for creditors to receive more through the proposed Plan on account of their claims than would be received in a straight liquidation by a trustee in a Chapter 7 case or from a distress sale of all the assets. If the Plan is not approved, the Debtor will continue to seek other reorganization alternatives, but liquidation might ensue, with the consequences as discussed above in relation to the liquidation alternative.

This Disclosure Statement is subject to the approval by the Bankruptcy Court.

**THE APPROVAL BY THE UNITED STATES BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT WILL NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE DEBTOR'S PLAN OR A GUARANTEE OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

Respectfully submitted this 21st day of July, 2013.


*/s/ Costa Bajjali, vice president*
SWB River Square GP, LLC
By:  Costa Bajjali
Its: Vice President


*/s/ Johnie Patterson*
Walker & Patterson, P.C.
Johnie Patterson Texas Bar #15601700
P.O. Box 61301
Houston, Texas 77208-1301
Telephone (713) 956-5577
Facsimile (713) 956-5570
jjp@walkerandpatterson.com